UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RANDI S. RUSSELL,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 05-606-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 18, 2005, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 22, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 2, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 7, 1954. [See Administrative Record ("AR") at 56.] She attended three years of college, and has past work experience as, among other things, a craft care specialist, office manager and bus driver. [AR at 67, 72, 79-85.]

On March 3, 2003, plaintiff protectively filed her current applications[1] for Disability Insurance Benefits and Supplemental Security Income, alleging that she has been unable to work since February 19, 2002, due to "bulging discs, pinched nerves, spina bifida occulta, enlarged left ventricle, heart and breathing problems," as well as high blood pressure and depression. [AR at 16, 56-58, 65-66, 328-30.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on November 23, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 345-91.]

On January 14, 2005, the ALJ determined that plaintiff was not disabled. [AR at 14-23.] When the Appeals Council denied review on May 25, 2005 [AR at 6-9], the ALJ's decision became the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff filed prior applications on July 30, 1992. The ALJ did not reopen those applications. [AR at 15.]

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an

impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

The ALJ first found that plaintiff last met the insured status requirements of the Act through the date of the decision. [AR at 16.] Applying the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 16.] At steps two and three, the ALJ concluded that plaintiff has a severe impairment consisting of "morbid obesity, degenerative arthritis of the neck and low back with right lower extremity radiculopathy and degenerative arthritis of the left knee, dilated cardiomyopathy, gastrointestinal reflux disease and aspiration asthma," but that the impairment does not meet or equal any impairment in the Listing. [Id.] At steps four and five, the ALJ concluded that plaintiff is not able to perform her past relevant work, but has the residual functional capacity ("RFC")[2] to perform a "significant range" of sedentary work.[3] He then found that a significant number of jobs

---

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally

exist in the national economy that plaintiff can perform. Accordingly, the ALJ found plaintiff not disabled. [AR at 14-23.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) develop the record with regard to a treating physician's opinion; and (2) properly consider another treating physician's opinion.[4] For the reasons explained below, this matter is remanded for further proceedings.

**THE ALJ'S DUTY TO DEVELOP THE RECORD**

Although plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id.

The ALJ's responsibility derives in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-11, 120 S.Ct. 2080 (2000). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into

---

and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a). Specifically, the ALJ concluded that plaintiff "can occasionally and frequently lift up to 10 pounds. She can stand and/or walk up to two hours in an eight-hour work day, fifteen to thirty minutes at a time and she can sit for up to six hours. She must be able to stand and stretch for one to three minutes every hour. [Plaintiff] is precluded from balancing, kneeling, climbing ladders and ropes, crouching, crawling, and walking on uneven ground. [Plaintiff] is limited to occasional bending, stooping, neck motion and fixed position of her head. [Plaintiff] is limited to being around fumes, odors, dust, toxins and gases on an occasional basis. She is limited to occasional use of foot controls with her left foot." [AR at 16.] The ALJ's Finding No. 12 that plaintiff can perform a significant range of light work [AR at 23], is contrary to his Finding No. 6 concerning sedentary work, and appears to be in error.

[4] The heading used by plaintiff in the Joint Stipulation for Issue No. 2 is "Whether the ALJ made any credibility findings regarding . . . plaintiff's testimony." Joint Stipulation at 2, 6. The content of this issue, however, relates to the rejection of a treating physician's opinion, not plaintiff's credibility.

the issues." 20 C.F.R. §§ 404.944 and 416.1444. See Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989)(recognizing ALJ's "duty of 'full inquiry' under § 416.1444").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978); see also 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3)(providing steps to obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (providing measures for obtaining additional information from treating doctors). Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. §§ 404.1519a and 416.919a; Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling); Pearson, 866 F.2d at 812-13.

Plaintiff contends that the ALJ erred in not developing the record further as to a physician who, on March 18, 2004, completed a Medical Opinion Re: Ability to Do Work-Related Activities (Physical), in which he indicated that plaintiff can sit, stand and walk less than 2 hours in an eight hour day, and can lift and carry less than 10 pounds on either an occasional or frequent basis. Joint Stip. at 3; see AR at 319-21. This individual's findings were based on an EMG of March 12, 2003 (found at AR 230-43), an MRI of plaintiff's lumbar spine on February 13, 2003 (found at AR 248-49), an MRI of plaintiff's cervical spine on April 17, 2003 (found at AR 246-47), and echocardiograms from September 5, 2002, and May 20, 2003 (found at AR 222, 264). [AR at 320.] The doctor also opined that plaintiff "is in constant pain," which is "aggravated w[ith] certain movement [and] being stationary." [AR at 321.] The physician's signature is illegible.

The ALJ rejected this opinion, found in Exhibit 17F, and gave it "little probative value." As his rationale the ALJ concluded that "[t]here is no evidence regarding the relationship between this care provider and [plaintiff]. It is not accompanied with a physical examination and there is no way to tell what kind of credentials, if any the signer of the document has. In conclusion the opinion is not supported by the medical evidence." [AR at 18-19.] Plaintiff asserts that the ALJ failed to develop the record by not clarifying who this physician is, and his relationship to plaintiff. Respondent argues that plaintiff made no attempt to clarify the source of the questionnaire, even though plaintiff's attorney had it for over two years, was given ample opportunity to ask for assistance in gathering medical evidence, and had the burden of proving disability.

Plaintiff submitted to the ALJ at the time of the hearing Exhibits 17F [AR at 319-21] and 18F [AR at 322-26; see AR at 348.] Exhibit 17F is the Medical Opinion Re: Ability to Do Work-Related Activities (Physical) at issue here, and 18F is a Cardiac Residual Functional Capacity Questionnaire. Toward the end of the hearing, the ALJ asked some questions concerning these new documents, indicating that he was "not sure of these doctors that filled out the cardiac residual functional capacity or the medical opinion."[5] He asks if one of the physicians is "Masis [phonetic], Masis, something like that," to which plaintiff's attorney indicates "Miray" (referring to Dr. H. John Marais, who completed the Cardiac Questionnaire). [AR at 386.] As to the other document, i.e., the Medical Opinion, the ALJ states that "this is a[n] illegible signature . . . I have no idea who this doctor is." Plaintiff immediately told him it was "Dr. Chang." [AR at 386.] The ALJ then goes on to question plaintiff about the number of times she saw Dr. Chang, and over what period of time. She responded that she saw Dr. Chang "dozens and dozens" of times from August, 2002, until August 2003, and then, after her insurance ran out, she saw him during lunch hour visits until August 2004. [AR at 386-87.]

---

[5] Both documents were completed in March, 2004. When receiving them into evidence at the hearing, the ALJ noted that both documents were dated in March, and were from "six months ago," clearly referring to March, 2004. There seems to be no question that these are the documents at issue herein.

It is thus apparent to the Court that plaintiff did in fact inform the ALJ that the report in question was completed by Dr. Chang, who was a treating physician of plaintiff. There is no basis for the ALJ's conclusion that there is no evidence of the relationship between plaintiff and this care provider, or that the report is unaccompanied by any physical examination. The record supports plaintiff's claim of frequent visits with Dr. Chang. See, e.g., AR at 154-59, 162-68 (progress notes from Dr. Chang, or indicating Dr. Chang is primary care doctor). Dr. Chang was following plaintiff's elevated blood pressure and history of congestive heart failure with an ejection fraction of 20-25%; he treated her with medications and referred her to Dr. Marais, a cardiologist. [AR at 154-55.] Dr. Chang also treated her asthma [AR at 162], and noted her back and neck pain. [AR at 163.]

The opinion of a treating physician is generally entitled to greater weight than the opinions of a physician who has not treated the claimant. "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, "the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion." Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001). Here, in disregarding plaintiff's testimony that the Medical Opinion was completed by Dr. Chang, the ALJ failed in his duty to completely develop the record as to this physician's identity and relationship to plaintiff (or ignored relevant evidence that was contained in the record), and thereby rejected a treating physician's opinion without providing the requisite reasons for doing so. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (the ALJ cannot justify a conclusion by ignoring competent evidence in the record); Reddick, 157 F.3d at 725. Remand is required.

/

/

/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to assess the March 18, 2004, Medical Opinion in light of its apparent authorship by Dr. Chang, a treating physician.[6] The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: August 29, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] As remand on this issue could impact on the ALJ's conclusion concerning Dr. Marais' opinion -- on which plaintiff's Issue No. 2 in the Joint Stipulation is based -- the ALJ is also directed on remand to reexamine his rejection of Dr. Marais' opinions in light of his review of Dr. Chang's report. The Court notes that Dr. Chang referred plaintiff to Dr. Marais for a cardiology consultation [AR at 154, 155]; the Court also notes, however, that plaintiff testified that she saw Dr. Marais only one time. [AR at 386-87.]